UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

DAVID TIFFANY,

Petitioner,

v.

ROBERT LEGRAND, *et al.*,

Respondents.

Case No. 3:13-cv-00682-MMD-CBC

ORDER

## I.  SUMMARY

This *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254 comes before the Court for consideration on the merits. (ECF No. 2.) Respondents have answered the petition (ECF No. 67), and Petitioner has replied[1] (ECF No. 70). For the reasons provided below, the Court will deny the petition on the merits.

## II.  BACKGROUND

Petitioner in this action challenges his 2007 state court conviction, pursuant to a jury trial, of two counts of lewdness with a child under 14, eight counts of sexual assault on a child under 14, three counts of solicitation of a minor to engage in acts constituting infamous crimes against nature, and five counts of child abuse and neglect. (ECF No. 2 at 16 (Exhibits ("Exhs.") 68 & 92).)[2]

The charges against Petitioner arose out of allegations in October 2004 that Petitioner had allowed his twelve-year-old daughter and her friends to smoke marijuana

---

[1]The reply appears to have been drafted by another person on Petitioner's behalf, which the Court mentions to inform Petitioner that the reply contains many inaccuracies with respect to the facts of Petitioner's case.

[2]The exhibits cited in this order, comprising the relevant state court record, are located at ECF Nos. 13-23.

in his presence. The investigation into those allegations led to allegations that Petitioner had solicited one of those minors, J.M., for fellatio, and had sexually assaulted another of the minors, T.T., multiple times. (*See* Exh. 3; Exh. 60 (Tr. 8-11).) The following relevant evidence was presented at Petitioner's trial.

At the time of the events in question, Petitioner was living with his daughter K.T. (Exh. 62 (Tr. 4-5).) One day in late 2003,[3] K.T. testified that Petitioner noticed J.M. smoking pot. (*Id.* at 7.) Petitioner asked K.T. if she could ask J.M. to come over and roll him a joint. (*Id.*) K.T. did not know J.M. at this point. (*Id.*) K.T. and J.M. both testified that K.T. did as asked and J.M. agreed to come over. (*Id.* at 7-8; Exh. 60 (Tr. 23).)

K.T. testified that when J.M. came over, they smoked marijuana with Petitioner, and they went on to do so on New Year's Eve and at her birthday party in February 2004. (Exh. 62 (Tr. 8-11).) J.M. also testified that he smoked marijuana with Petitioner at K.T.'s birthday party and ten other times. (Exh. 60 (Tr. 21-25).) K.T.'s friend C.J. testified that she smoked pot with K.T., K.D., J.M., and Petitioner during K.T.'s birthday party. (Exh. 60 (Tr. 44-45).) And K.T.'s best friend, K.D., testified that she smoked marijuana, in Petitioner's presence, 10 or 12 times, including on K.T.'s birthday. (Exh. 62 (Tr. 143-44, 146).)

When asked whether he had ever supplied the marijuana to smoke at Petitioner's house, J.M. said he did but he denied that he had ever stolen it from his parents. (Exh. 60 (Tr. 33-34).) K.T., however, testified that J.M.'s parents smoked pot and that J.M. broke into his own house to steal drugs from his parents. (Exh. 62 (Tr. 18).)

After K.T. and J.M. met, J.M. began going over to K.T.'s house a couple of times a week. (Exh. 60 (Tr. 20-21).) Once, while J.M. was hanging out with K.T. and K.D., J.M. was asked by Petitioner if Petitioner could give him fellatio. (*Id.* at 26-27.) Although J.M. declined, Petitioner asked several more times. (*Id.* at 34, 39.) J.M. told K.T. what Petitioner had asked him, K.T. got sick, and J.M. went home. (*Id.* at 27.) J.M. recalled

---

[3]K.T. did not testify as to the specific date of this event, but her testimony generally supports an inference that it took place in late 2003.

another instance in which he had been asleep on the couch at Petitioner's house and woke up to find Petitioner next to him, on his knees, asking if he could perform oral sex on him. (*Id.* at 27-29.) J.M. said no that time, as well. (*Id.* at 29.)

K.D. testified that one night, she, K.T., and J.M. were hanging out in K.T.'s room, and Petitioner kept coming in and asking J.M. questions; at one point, K.D. followed them out of K.T.'s room and heard Petitioner ask J.M. for oral sex. (Exh. 62 (Tr. 147-49).) K.D. heard J.M. decline, saying "I have a girlfriend," to which Petitioner responded: "[F***] your girlfriend and [f***] her family." (*Id.* at 150.) K.D. took J.M. into K.T.'s room and together they told K.T. what Petitioner had said. (*Id.* at 148-49.) K.T. cried and freaked out. (*Id.* at 149.)

K.T. testified that on New Year's Eve, she was at her house with J.M., K.D., and Petitioner, when J.M. and K.D. confronted her in her room and told her Petitioner had asked J.M. for oral sex. (*Id.* at 11-12.) K.T. was "really messed up and … didn't want to believe it" but then "every like five minutes or so [Petitioner w]ould come in [her] room and ask to take [J.M.] out and stuff and so [she] went out there with him." (*Id.* at 12.) K.T. then observed Petitioner ask J.M. for fellatio; while she didn't hear any words, she could tell what Petitioner was asking by the hand movements he was making. (*Id.* at 12-13.) K.T. stated that while she had known J.M. to lie in the past, she believed his allegations against her dad; "[p]lus, [she] saw it." (*Id.* at 19.)

Sometime after her birthday party, K.T. met T.T., who was twelve or thirteen.[4] (Exh. 62 (Tr. 13, 65-68).) T.T.'s father testified that T.T. had ADHD, an anxiety disorder and a mood disorder, as well as other medical problems, and was taking Adderall, "Rispidol" and Clonidine. (*Id.* at 44-45).) K.T. testified that T.T. began coming over frequently to see Petitioner, which bothered K.T. because Petitioner "would always tell [her] that he wanted a son, and [she] always felt like [she] could never measure up to

---

[4]T.T. testified he was thirteen but based on the timing of the allegations against Petitioner and T.T.'s birthday, it is more likely that he was twelve at the time. (Exh. 62 (Tr. 65-66).)

that." (*Id.* at 14.) T.T. would come over even when K.T. wasn't there and was there every other weekend and every day after school. (*Id.* at 14-15.) K.T. also testified that T.T. would spend the night, either on the couch or in Petitioner's room. (*Id.*) T.T. also testified that he would spend the night when K.T. wasn't there. (*Id.* at 68-71.) He estimated he spent the night ten times, and he usually slept in Petitioner's room but sometimes slept on the couch. (*Id.* at 101-02.)

T.T.'s father testified that T.T. spent the night at Petitioner's house two to three times a week. (*Id.* at 47.) C.J. testified that she spent the night at K.T.'s house a lot, and that Petitioner did not let any boys, except for T.T., spend the night. (Exh. 60 (Tr. 47).) She testified that when T.T. stayed over, he would sleep in either the living room or Petitioner's room. (*Id.* at 48.)

T.T. smoked marijuana several times with Petitioner. (Exh. 62 (Tr. 71-72).) One time, after smoking, Petitioner touched T.T.'s penis with his hand. (*Id.* at 74-75.) They were in Petitioner's room together. (*Id.* at 74-75.) Another time when he was asleep on the couch, T.T. woke up to find Petitioner touching his penis. (*Id.* at 77.) Yet another time, T.T. was in the car with Petitioner and asked Petitioner if he would buy him cigarettes; Petitioner responded by pointing to T.T.'s penis and stating, "I want that before I ever buy you cigarettes." (*Id.* at 79.) They went back to Petitioner's house, where they repeated their exchange and then went in to Petitioner's bedroom, where Petitioner touched T.T.'s penis first with his hand and then with his mouth. (*Id.* at 79-81.) T.T. testified that Petitioner would perform fellatio on him whenever T.T. wanted cigarettes or alcohol and it usually happened in Petitioner's bedroom. (*Id.* at 81.) When he spoke to police, T.T.'s estimates for how often it happened ranged from zero to fifty, but on the stand he testified that it happened around ten times. (*Id.* at 82-83, 96, 99-100.)

C.J. testified that sometimes T.T. had to use the shower at K.T.'s house due to medical problems, and sometimes Petitioner was in the room with T.T. when that happened. (Exh. 60 (Tr. 55-56).) One day, K.T. came home from visiting her mom to find T.T. locked in Petitioner's bedroom with Petitioner. (Exh. 62 (Tr. 15).) When she tried to

open Petitioner's door, she heard Petitioner say, "hold on" and the sound of him putting his belt back on. (*Id.*)

T.T. testified that he never told Petitioner no and let Petitioner touch him because he wanted Petitioner to buy him cigarettes. (*See id.* at 100-01.) But he also said he felt violated and it was "forced." (*Id.* at 91, 133-34.) Petitioner once threatened T.T. saying "You don't do this, I'm going to hurt you." (*Id.* at 135, 139-40.) After Petitioner's arrest, T.T. told K.T. that he did sexual stuff with Petitioner so Petitioner would buy him cigarettes. (*Id.* at 21.)

K.T.'s mother testified that when she learned K.T. had been smoking marijuana with Petitioner, she refused to return K.T. to Petitioner's house. (*Id.* at 30-32.) K.T. admitted that she had not told police about either J.M. or T.T. when first interviewed but explained that was because she still wanted to continue living with her father and doing drugs. (Exh. 62 (Tr. 16, 20).) K.T. denied speaking to her mother about what her testimony would be. (*Id.* at 20.)

Detective Jeffrey Lomprey testified that Petitioner initially emphatically denied providing the minors with marijuana but later admitted he had smoked with K.T., K.D., C.J., J.M. and T.T. (*Id.* at 166-68.) Petitioner also admitted that he'd provided tobacco to T.T. (*Id.* at 170-71.) Petitioner said that he and T.T. were friends, that they would call each other on the phone, and that T.T. was at his house several times a week. (*Id.* at 171-72.)

Petitioner testified on his own behalf. (Ex. 65 (Tr. 116 *et seq.*).) Petitioner admitted that he had asked J.M. to roll him joints and that he let K.T. and her friends smoke marijuana in his presence at least three times. (*Id.* at 126-28.) He denied ever propositioning J.M. for sex, explaining that the night he repeatedly asked to talk to J.M. he was asking J.M. to leave the house because it was bed time and he didn't let boys spend the night. (*Id.* at 130-31.) Petitioner then clarified that he did not let boys spend the night in his daughter's room but did let them sleep on the couch in the living room. (*Id.* at 131.) He then admitted that T.T. spent the night about six times, but asserted he was never in his bedroom alone with T.T. (*Id.* at 131-32.) Petitioner admitted buying T.T.

cigarettes, but said it was in exchange for T.T. mowing his lawn. (*Id.* at 132.) Petitioner testified that T.T. called his house all the time and that after K.T. was taken by her mom, T.T. broke two of his windows and left a note in the house that gave Petitioner the impression that he was mad that K.T. wasn't around anymore. (*Id.* at 138-40.)

T.T. admitted that after K.T. was taken by her mom he was mad that she was gone, and he broke into Petitioner's house and called and left Petitioner messages. (Exh. 62 (Tr. 105-06).)

Following the four-day trial, the jury returned verdicts of guilty on all counts. (Exh. 68.) Petitioner filed a motion for a new trial or judgment of acquittal, which focused primarily on T.T.'s inconsistent statements and behavior during his video-recorded police interview and alleged the State had failed to prove lack of consent. (Exh. 70.) The motion was denied. (Exh. 85.) Petitioner was sentenced, judgment of conviction entered, and Petitioner appealed. (Exhs. 85, 100, 92.) The Nevada Supreme Court affirmed. (Exh. 145.)

Petitioner thereafter filed a postconviction petition for habeas relief in state court. (Exh. 158.) Counsel was appointed and filed a supplemental brief.[5] (Exh. 216.) The court conducted an evidentiary hearing on Petitioner's ineffective assistance of counsel claims. (Exh. 226.) At the hearing, Petitioner's trial counsel testified that he did not know why he waited until the eve of trial to move for a psychological evaluation of T.T. (*Id.* (Tr. 17).) Petitioner testified that he asked counsel to file such a motion at least six months before trial. (*Id.* at 32.) The trial court ultimately denied relief on the petition, Petitioner appealed, and the Nevada Supreme Court affirmed.[6] (Exhs. 233, 237, 245, 267.)

---

[5]Initially the trial court denied the petition as too long, but the Nevada Supreme Court reversed that decision and remanded for further proceedings. (Exhs. 176, 201.)

[6]While his appeal was pending, petitioner filed a second state postconviction habeas petition, which the trial court also denied. (Exhs. 247, 257.) Petitioner appealed, and the Nevada Supreme Court affirmed the denial of the petition as procedurally barred. (Exhs. 259, 265.)

Petitioner thereafter initiated the instant federal habeas corpus proceedings. Several of the petition's original claims were dismissed as unexhausted. (ECF No. 53.) The surviving claims are before the Court for consideration on the merits.

## III. LEGAL STANDARD

28 U.S.C. § 2254(d) provides the legal standards for this Court's consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts

the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000) and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *See, e.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *See*

8

*Cullen*, 563 U.S. at 181. The state court's decisions on the merits are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, 135 S. Ct. 2187, 2208 (2015).

## IV.  DISCUSSION

### A.  Ground 1

In Ground 1, Petitioner asserts that his bail was excessive, and the court erred in refusing to reduce it. He also asserts that his rights were violated by his counsel's failure to move for the disqualification of Judge Miller and Judge Mosley and the judges' failure to recuse themselves. (ECF No. 2 at 47-49.) Judge Miller was the judge who set Petitioner's bail, and Judge Mosley was the judge during pretrial proceedings. Ultimately, Petitioner's case was tried before Judge Miriam Shearing.

When Petitioner was arrested, Judge Miller set his bail at $570,000. (Exhs. 2, 6.) At a hearing the following month, defense counsel asked whether Judge Miller needed to recuse from Petitioner's case because he had recused from an earlier action involving Petitioner. Judge Miller explained that he recused in the other case because he knew the victims but that he did not know the victims in this case. (Exh 6 (Tr. 4-5).)

During the pendency of his criminal proceedings, Petitioner filed several motions for release or reduction in bail. (Exhs. 12, 29, 44.) On January 12, 2005, Judge Mosley heard Petitioner's first motion and denied it, after considering the charges against Petitioner, how long Petitioner had lived in the community, where he would live, that he was on disability and SSI, and the prison sentence Petitioner was facing if convicted. (Exh. 14 (Tr. 2-5).) On October 12, 2005, the trial court heard the second motion, where defense counsel argued that the continuance of trial in light of extensive discovery justified Petitioner's release. (Exh. 31.) The court held a reduction in bail was not justified. (*Id.*) On May 8, 2006, the district court held a hearing on the third motion. (Exh. 46.) The court again denied the motion, after noting that Petitioner had failed to appear in 2003 in a malicious destruction of property case. (Exh. 46 (Tr. 3).)

Petitioner asserts that his $570,000 bond and the court's refusal to reduce the bond violated his constitutional rights.

Assuming without deciding that Petitioner states a cognizable Eighth Amendment claim,[7] the claim was rendered moot upon Petitioner's conviction. *See Murphy v. Hunt*, 455 U.S. 478, 481 (1982).

Insofar as Petitioner asserts a due process violation, the Nevada Supreme Court held that the trial court considered the appropriate factors under the state statute. (Exh. 145 at 4-5.) This determination of state law is not one the Court may reconsider. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of the federal habeas court to reexamine state court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). The state court's ruling, even if erroneous, is grounds for federal habeas relief only if it is so fundamentally unfair as to violate due process. *See Dillard v. Roe*, 244 F.3d 758, 766 (9th Cir. 2001); *see also Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998). Habeas relief is thus available only if a ruling was arbitrary, disproportionate to the end it was asserted to promote, or so prejudicial that it rendered the trial fundamentally unfair. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir.1995). Even then, a petitioner is entitled to habeas relief only if the error has a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 69, 637 (1993).

The Court cannot conclude that Petitioner's bail amount and the court's refusal to reduce it was arbitrary, disproportionate, or fundamentally unfair. Petitioner was facing nearly twenty counts that involved sexual abuse of minor children, half of which carried

---

[7]Respondents are correct that the United States Supreme Court has never explicitly held that the excessive bail provision of the Eighth Amendment applies to the states, but its cases suggest that it would so hold, and many courts have held the provision does apply to the states. *See, e.g.*, *Sistrunk v. Lyons*, 646 F.2d 64, 69 (3d Cir. 1981).

sentences of up to life in prison, and had a previous failure to appear. Petitioner's due process claim thus fails.

As to the claim that Judges Miller and Mosley should have recused themselves and that counsel was ineffective for failing to move them to do so, the Nevada Supreme Court held:

> [A]ppellant argues that his pretrial counsel was ineffective for failing to seek the disqualification of Judge Victor L. Miller and Judge Donald Mosley. Appellant failed to demonstrate deficiency or prejudice. Appellant claims that Judge Miller should have recused himself because he had recused himself in a previous case involving appellant. However, in response to counsel's inquiry, Judge Miller stated that he had recused himself previously because he had knowledge of the victims in that case. Because Judge Miller did not have knowledge of the victims in this case, counsel had no basis to seek his disqualification. *See Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) ("Trial counsel need not lodge futile objections to avoid ineffective assistance of counsel claims.") Appellant also claims that Judge Mosley should have recused himself because he was biased, as he denied appellant's motion for expert and investigative fees and expressed concerns about the costs of indigent defense. Appellant failed to demonstrate that Judge Mosley's rulings and comments constituted bias, *see Cameron v. State*, 114 Nev. 1281, 1283, 968 P.2d 1169, 1171 (1998), thus a motion to disqualify on this basis would not have been successful. Furthermore, to the extent that appellant argues that Judge Mosley improperly denied his motion for investigative fees, he cannot demonstrate prejudice, as this court concluded on direct appeal that the denial of the motion was harmless error in light of the overwhelming evidence of guilt presented at trial. . . . Therefore, the district court did not err in denying this claim.

(Exh. 267 at 2.)

Petitioner has not established that either Judge Miller or Judge Mosley should have recused himself.

Petitioner asserts that Judge Miller had a bias against him that arose from interactions in a previous restraining order case, which caused Judge Miller to know how "vociferous [Petitioner] was." (ECF No. 2 at 47.) Petitioner further argues that Judge Miller previously had both of the male victims in his court. (*Id.* at 48.) Opinions "formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Such deep-

seated bias on the part of Judge Miller has not been shown here. The Nevada Supreme Court was not therefore objectively unreasonable in finding no basis for the recusal of Judge Miller.

Petitioner asserts that Judge Mosley's bias against Petitioner was evident from his refusal to grant Petitioner investigative fees on the basis that Petitioner was indigent. Again, a judge need not recuse himself on the basis of prior rulings alone; Petitioner must show some deep-seated bias. The Nevada Supreme Court held that Mosley's ruling was not indicative of bias, and the Court cannot find this conclusion to be objectively unreasonable.

Accordingly, Petitioner has not established any entitlement to relief on his claim that Judge Miller and Judge Mosley erred in failing to recuse themselves and cannot, for the same reasons, establish ineffective assistance of counsel.

Nor has Petitioner established that his counsel was ineffective. Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief— deficient performance by counsel and prejudice. *See* 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Id.* at 696.

As there was no basis for the recusal of either judge, Petitioner cannot show counsel was deficient for failing to move for the judges' recusal or that he was prejudiced by such failure. The Nevada Supreme Court was not therefore objectively unreasonable in rejecting this claim.

Petitioner is not entitled to relief on Ground 1 of the petition.

**B. Ground 5, in part**

In the surviving portion of Ground 5, Petitioner asserts that his speedy trial rights were violated by the 26-month delay between the time he was arrested and his trial. (ECF No. 2 at 75-80; ECF No. 29 at 5, 7.)

Following Petitioner's initial appearance, trial was set for August 1, 2005. (Exh. 10.) But at calendar call, defense counsel asked for a continuance because the State had recently disclosed a substantial amount of discovery. (Exh. 28.) The continuance was granted with a dual setting of January 2006 and August 2006. (*Id.*) At the January 2006 calendar call, the defense again was not ready to proceed, and trial was left on the August 2006 stack. (Exh. 38.) In March 2006, defense counsel moved to withdraw because it had recently discovered that its office had represented two of the victims in the case. (Exh. 39.) New counsel was appointed. (Exhs. 41, 42). New counsel was ready to proceed in August 2006, but this time court congestion caused trial to be continued yet again. (Exhs. 53-57.) Ultimately, trial commenced on January 16, 2007. (Exh. 60.)

The Nevada Supreme Court rejected Petitioner's speedy trial claim as follows:

> Tiffany contends that he was denied his constitutional right to a speedy trial because the State deliberately withheld crucial information and evidence, which ultimately forced him to request a continuance. Tiffany argues that he was prejudiced by the delay because it caused potential defense witnesses and the victims to forget and not accurately recall events from the past.
>
> The Sixth Amendment right to a speedy trial attaches when a defendant is arrested, indicted, or charged in a criminal complaint. Sheriff v. Berman, 99 Nev. 102, 106, 659 P.2d 298, 301 (1983). We consider four factors in determining whether a defendant was denied the right to a speedy trial: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant from the delay." Id. (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). "The[se] four . . . factors must be considered together, and no single factor is either necessary or sufficient." Id. at 107, 659 P.2d at 301.
>
> With respect to the fourth factor, "[w]hile a showing of prejudice to the defense is not essential, courts may weigh such a showing (or its absence) more heavily than other factors." Id. We assess whether the delay prejudices the defendant in light of the purpose of guaranteeing a speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety

and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532. A defense is prejudicially impaired by a delay "if defense witnesses are unable to recall accurately events of the distant past." Id. However, "[b]are allegations of impairment of memory, witness unavailability, or anxiety, unsupported by affidavits or other offers of proof, do not demonstrate a reasonable possibility that the defense will be impaired at trial or that defendants have suffered other significant prejudice." Berman, 99 Nev. at 107, 659 P.2d at 301.

Here, just over two years elapsed between Tiffany's arrest in November of 2004 and the start of his trial in January of 2007. The district court continued Tiffany's trial on three occasions. Two of the continuances were requested by Tiffany, while the district court continued the trial a third time due to court congestion. Tiffany initially waived his right to a speedy trial, but later asserted it in August of 2006.

Lastly, Tiffany fails to demonstrate a reasonable possibility that the defense was impaired or suffered significant prejudice by the delay. There is no evidence that the State withheld exculpatory evidence. Rather, our review of the record shows that Tiffany requested the evidence in June of 2005. The State informed Tiffany that they would provide him with the evidence as soon as they acquired it and ultimately did so approximately one and a half months later. Furthermore, we determine that there is no evidence to support Tiffany's contention that the delay resulted in memory loss for key witnesses. The pretrial interviews and preliminary hearing transcripts were available for Tiffany to impeach witnesses about any inconsistencies in their testimony. Tiffany also does not allege any specific exculpatory details the witnesses would have testified to if the trial had occurred sooner. Accordingly, we conclude that Tiffany was not denied his right to a speedy trial.

(Exh. 145 at 5-6.)

The Nevada Supreme Court applied the correct United States Supreme Court precedent, *Barker v. Wingo*, 407 U.S. 514 (1972), and addressed each of the four factors courts must consider in assessing whether there has been a speedy trial violation. Affording the Nevada Supreme Court's ruling the deference it is due, the Court does not find it to be objectively unreasonable.

The length of the delay was just over 26 months, which is presumptively prejudicial and thus weighs in Petitioner's favor, but not heavily so. *See United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003). The Nevada Supreme Court concluded that trial was continued twice at defense request and once due to court congestion. These findings are supported by the record. (Exhs. 28, 38, 53-57.) "[D]elay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial argument." *McNeely v. Blanas*, 336 F.3d 822, 827 (9th Cir. 2003). The third

continuance due to court congestion does weigh in Petitioner's favor, however, as it is a neutral reason that must be attributed to the State. The second factor thus weighs only slightly in Petitioner's favor. The Nevada Supreme Court found Petitioner did not assert his speedy trial rights until August 2006, and this finding is also supported in the record. (*See* Exh. 56; *see also* ECF No. 2 at 78-79 (Petitioner admitting that he waived his speedy trial rights at the behest of his attorney, although arguing he did not knowingly do so)).) The late assertion of his rights and the fact Petitioner never moved to dismiss the indictment on speedy trial grounds suggest that to the extent this factor weighs in Petitioner's favor, it does so only slightly. *See United States v. King*, 483 F.3d 969, 976-77 (9th Cir. 2007) (third *Barker* factor did not "strongly counsel in favor of finding a Sixth Amendment violation" when defendant "at times asserted his right to a speedy trial, at other times he acquiesced in and sought continuances and exclusions of time"). Finally, the Nevada Supreme Court concluded that Petitioner had not established prejudice. The Court also finds this conclusion objectively reasonable, in light of Petitioner's arguments and the record. Because this factor may be weighed more heavily than the others, and the other factors weigh only slightly in Petitioner's favor, the Nevada Supreme Court was not objectively unreasonable in concluding that Petitioner had not established a speedy trial violation.

Petitioner argues that the State forced the delays by disclosing discovery on the eve of trial. As to the first request, the Nevada Supreme Court noted that Petitioner requested discovery in June 2005 and that the State turned it over as soon as it obtained it, about a month-and-a-half later. While the continuance may have been prompted by the last-minute disclosure, the Court cannot conclude the Nevada Supreme Court was objectively unreasonable in attributing the continuance to the defense, particularly in view of the fact that it was the defense that waited until one month before trial to request the evidence and it was the defense who wanted more time to review the evidence. As to the second continuance in January 2006, the record suggests it was requested in order to allow defense counsel to file a written motion for psychological exam of the victims after

the State noticed an expert witness on the behavior of abuse victims on December 19, 2005. (*See* Exhs. 33, 35, 38.) The basis for the request was thus the defendant's choice to pursue a motion for psychological exam rather than proceed to trial, even though possibly prompted by the State's expert witness disclosure. The Court cannot find the Nevada Supreme Court's finding that this continuance was also attributable to Petitioner to be objectively unreasonable, either.

Insofar as prejudice is concerned, Petitioner claims that the delay allowed the State time to build its case where it otherwise would have had no case to present. Petitioner focuses primarily on K.T.'s testimony, which was particularly damaging to Petitioner and which Petitioner asserts was the result of Parental Alienation Syndrome ("PAS") instigated by Petitioner's ex-wife and furthered by the State. Petitioner argues that PAS is evident in the fact that K.T. did not initially tell the police the damaging details she relayed on the stand and because K.T. claimed on the stand that Petitioner had always wanted a son, which is something he asserts he never told her. However, K.T.'s initial reluctance to speak out against her father is understandable as a matter of common sense and was explained to the jury. Her failure to immediately implicate her father does not establish that she would not have done so by the time of his trial. And even if trial had taken place before K.T. became willing to testify against her father, there was a substantial amount of evidence against Petitioner on all the charges even without her testimony.

In short, Petitioner's argument that the State would have had no case against him but for the delay is speculative and unsupported. The Nevada Supreme Court was not objectively unreasonable in rejecting it, and was not objectively unreasonable in finding no speedy trial violation. Petitioner is not entitled to relief on Ground 5 of the petition.

### C. Ground 8, in part

The surviving portion of Ground 8 asserts that there was insufficient evidence to support Petitioner's convictions for sexual assault, child abuse, and solicitation. (ECF No. 29 at 5, 7.)

A federal court collaterally reviewing a state court conviction for sufficiency of the evidence does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *See Payne v. Borg*, 982 F.2d 335, 338 (9th Cir.1992). Rather, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The *Jackson* standard "looks to whether there is sufficient evidence which, if credited, could support the conviction." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). That is, "faced with a record of historical facts that supports conflicting inferences" the court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010).

With respect to the sexual assault charges, the Nevada Supreme Court held:

> We conclude, in viewing the evidence in the light most favorable to the prosecution, that a rational trier of fact could have found T.T.'s lack of consent. T.T. was 12 years old at the time of the sexual abuse. He testified that he felt "violated" when Tiffany performed fellatio on him and that one time, when he awoke to Tiffany touching his penis, he pretended to stay asleep because he worried that if he woke up, "things bad would happen, go crazy." T.T. also testified that he was forced and threatened by Tiffany to allow him to perform fellatio.

(Exh. 145 at 11-12.)

At the time of Petitioner's alleged crimes, a person who subjected a minor under fourteen to fellatio, against the minor's will or under conditions in which the perpetrator knew or should have known that the minor was mentally or physically incapable of resisting or understanding the nature of his conduct, was guilty of sexual assault with a minor under fourteen. (Exh. 69 at 12.) *See also* Nev. Rev. Stat. §§ 200.364 & 200.366 (West 2004). The Nevada Supreme Court's conclusion that there was sufficient evidence to support the eight convictions for such conduct is supported by the record and not objectively unreasonable.

T.T. testified that, when he was a minor under fourteen, Petitioner performed fellatio on him at least ten times, and circumstantial evidence existed to support this claim, including the well-established fact that T.T. spent the night at Petitioner's house frequently and two witnesses (K.T. and C.J.) said T.T. often slept in Petitioner's room. K.T. also once came home to Petitioner and T.T. locked in Petitioner's room and heard what sounded like Petitioner putting his belt back on. As to consent, T.T. said at various times that he was violated, he was forced, and Petitioner threatened him to do so. While he also testified that he never told Petitioner "no" and did it in exchange for cigarettes, in view of T.T.'s age,12, and mental and physical conditions, in tandem with his testimony that he felt violated and was forced, a rational trier of fact could have concluded that T.T. could not have given or did not give his consent. Sufficient evidence therefore supported the sexual assault convictions.[8]

Petitioner's argument here focuses not on the evidence of lack of consent but instead on T.T.'s credibility. (ECF No. 2 at 93-98.) However, the credibility of a witness is a determination within the province of the jury. *See Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (stating that a jury's credibility determinations are entitled to "near-total deference"). Neither the fact that T.T. failed to disclose his allegations of abuse in his first

---

[8]The Court notes that to the extent Petitioner argues the lewdness and sexual assault charges are mutually exclusive and redundant (ECF No. 2 at 102), the claim is without merit. Lewdness is mutually exclusive of sexual assault insofar as one single act cannot violate both statutes. *See Braunstein v. State*, 40 P.3d 413, 420 (Nev. 2002) (citing *Townsend v. State*, 734 P.2d 705, 710 (Nev. 1987)). Further, even if there are two acts, a lewd act and an act constituting sexual assault, the lewd act will be considered redundant of the sexual assault if it occurred incidental to a sexual assault. *See id.* at 421 (affirming trial court's striking of lewdness conviction where petitioner convicted of both sexual assault and lewdness for the act of placing his hand under the victim's panties and digitally penetrating her); *see also Crowley v. State*, 83 P.3d 282, 285-86 (Nev. 2004) (finding that act of rubbing the victim's private parts outside the pants, then putting hand inside the pants and touching the victim's penis, then pulling down the victim's pants and performing fellatio constituted one sex act because the lewd acts were incidental to the sexual assault). Here, neither of the lewdness convictions was based on an act that was incidental to a sexual assault and each was based on conduct that could not be classified as a sexual assault. (*See* Exh. 62 (Tr. 86-91).) The sexual assault and lewdness convictions were therefore not redundant.

interview with detectives nor his assertion at the preliminary hearing that his dad made him return for the second police interview demonstrates that T.T.'s allegations were false or that no rational trier of fact could have believed them. And while Petitioner may have believed the evidence showed T.T. was lying, the jury clearly did not think he was, and the jury had before it the evidence to make that determination, including T.T.'s testimony and his police interview. (*See* Exh. 67.) The Nevada Supreme Court was therefore not objectively unreasonable in finding sufficient evidence to support the sexual assault convictions.

With respect to the child abuse charges, the Nevada Supreme Court held:

> We also conclude that a rational trier of fact could have found that Tiffany committed child abuse and neglect of five minors. K.T., J.M., T.T., K.D., and C.J. all testified that they smoked marijuana in Tiffany's presence. Detective Lomprey also testified that Tiffany admitted to smoking marijuana with all five minors.

(Exh. 145 at 12.)

The state court's finding in this regard is not objectively unreasonable. Child abuse and neglect result when a person willfully causes a child who is less than 18 years of age to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or who willfully causes a child to be placed in a situation where the child may suffer physical pain or mental suffering as a result of the abuse or neglect. (Exh. 69 at 19.) *See also* Nev. Rev. Stat. § 200.508(1). Each of the named minor victims testified that Petitioner allowed them to smoke marijuana in his presence. The Nevada Supreme Court was not therefore objectively unreasonable in finding the evidence sufficient to support five convictions for child abuse and neglect.

Finally, with respect to the solicitation counts, the Nevada Supreme Court held: "[W]e conclude that a rational trier of fact could have found that Tiffany solicited J.M. for fellatio on three occasions. J.M. testified that Tiffany had propositioned him for fellatio on two separate days, but on one day asked him repeatedly. K.T. and K.D. corroborated J.M.'s testimony." (Exh. 145 at 12.)

The evidence at trial supported a conviction under Nev. Rev. Stat. § 201.195. J.M. testified that Petitioner solicited him for oral sex on two separate days, and on one of those days he did so multiple times. Petitioner's own daughter and her best friend recalled a night when Petitioner repeatedly came into K.T.'s room to talk to J.M. and both recalled Petitioner asking J.M. to give or receive fellatio. They also all recalled that J.M. and K.D. told K.T. about the events that night and that K.T. got upset. Their stories were remarkably consistent. But Petitioner attacks J.M.'s credibility by pointing out that J.M. first told police the conduct began in the summer around K.T.'s birthday party when K.T.'s birthday was actually in February, and arguing that J.M. lied when he said he did not steal drugs from his parents. Again, a witness' credibility is for the jury to decide, and the Court is not persuaded that no rational trier of fact could have credited J.M.'s testimony. The Nevada Supreme Court's conclusion that sufficient evidence supported the solicitation charges was not objectively unreasonable.

Petitioner is not entitled to relief on Ground 8.

### D. Ground 9, in part

The surviving portion of Ground 9 asserts that trial counsel was ineffective for failing to move to sever the counts of child abuse and neglect from the other charges. (ECF No. 29 at 5, 7.) The Nevada Supreme Court rejected this claim as conclusory. (Exh. 267 at 4-5.)

Petitioner has not demonstrated deficient performance or prejudice. The child abuse charges were related to the sexual abuse charges insofar as they occurred around the same time, involved similar victims, and Petitioner clearly employed marijuana in a manner as to allow him access to the minor victims. It was not deficient performance for counsel to fail to move to sever these charges, just as it is not reasonably likely any such motion would have been granted. It is further not reasonably likely that, even if severed, Petitioner would have had a better result as to any of the charges, as the evidence against Petitioner on all charges was substantial.

Petitioner has not established an entitlement to relief on Ground 9 of the petition.

## E.  Ground 18

In Ground 18, Petitioner asserts that trial counsel was ineffective for failing to follow the correct procedure to obtain an independent psychological evaluation of the victim and the trial court erred by denying the motion for a psychological evaluation of T.T.[9] (ECF No. 2-1 at 20-23.)

In December 2005, Petitioner filed a motion that sought, in the alternative, psychological evaluations of T.T and J.M. (Exh. 35.) No ruling on the motion appears on the record, although it appears that prior to the January 2006 calendar call, the parties met with the court in chambers and afterwards, at the calendar call, the court indicated that it wanted the motion for psychological evaluation filed in writing, and counsel indicated he would do so but never did. (Exh. 38.)

Thereafter, on the second day of trial, defense counsel filed a motion for psychological evaluation of T.T. (Exh. 63.) Counsel argued that there was reason to conclude T.T.'s mental state affected his veracity because T.T. initially claimed nothing had happened, then said it happened two times, ten times and then fifty times. (*Id.*) The court denied the motion, finding there was corroborating evidence and nothing about T.T.'s testimony on the stand suggested that his veracity was impacted by his mental state. (Ex. 62 (Tr. 111).) On appeal, the Nevada Supreme Court concluded the motion was properly denied because Petitioner had failed to comply with local court rules with respect to the timely filing of the motion.[10] (Exh. 145 at 9.)

---

[9]The Court construes this claim as directed at only T.T. as that was the claim raised in state postconviction proceedings. (*See* Exh. 158B at 103; Exh. 216 at 20 (citations are to original page numbers).)

[10]Respondents argue, in a footnote, that the Nevada Supreme Court's ruling had the effect of procedurally defaulting this claim. However, the Court previously ordered Respondents to raise all procedural defenses in one motion to dismiss (ECF No. 7), and Respondents did not argue in their motion to dismiss that this claim of Ground 18 was procedurally defaulted. (ECF No. 12). To the extent Respondents are arguing that the Court should dismiss this part of Ground 18 as procedurally defaulted, this argument has been waived. Even if the argument were not waived, however, Respondents have not demonstrated that a procedural default is appropriate based on the state courts' application of the particular rule in this case.

While the Nevada Supreme Court did not address this claim on the merits, the trial court did. It evaluated the factors identified by the Nevada Supreme Court in *Abbott v. State*, 138 P.3d 462 (Nev. 2006), to determine whether a defendant may be granted a psychological exam. The state court's ruling was thus a ruling of state law. Again, a state court's ruling is grounds for federal habeas relief only if it is so fundamentally unfair as to violate due process. *See Dillard*, 244 F.3d at 766; *see also Windham*, 163 F.3d at 1103. Habeas relief is thus available only if a ruling was arbitrary, disproportionate to the end it was asserted to promote, or so prejudicial that it rendered the trial fundamentally unfair. *See Holmes*, 547 U.S. at 324; *Walters*, 45 F.3d at 1357. Even then, a petitioner is entitled to habeas relief only if the error has a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637.

As Respondents correctly point out, Petitioner has not identified any clearly established Supreme Court law holding that denial of a psychological examination of an alleged abuse victim violates due process. Thus, the question is whether in this case the denial of a psychological examination of T.T. was arbitrary, disproportionate to the ends asserted to promote, or so prejudicial it rendered the trial fundamentally unfair or, even if it was, whether Petitioner suffered actual prejudice.

The trial court made its finding after hearing a substantial portion of T.T.'s testimony and other testimony that at least partially corroborated his claims. This finding was not arbitrary or fundamentally unfair, particularly where the trial court's conclusion is supported by the record and where the motion came in the middle of trial, after T.T. had already testified at length. Petitioner has not established that the denial of his motion for a psychological evaluation of T.T. was a violation of his due process rights.

As to the ineffective assistance of counsel aspect of this claim, the Nevada Supreme Court held:

> Appellant failed to demonstrate prejudice. In denying his untimely motion for a psychological evaluation, the district court found that an evaluation

was not warranted because the victim's testimony was supported by corroborating evidence and there was no indication that the victim's mental state affected his veracity. *See Abbott v. Nevada*, 122 Nev. 715, 724, 138 P.3d 462, 468 (2006). Therefore, appellant failed to show a reasonable probability of a different outcome had counsel filed a timely motion. Accordingly, the district court did not err in denying this claim.

(Exh. 267 at 4.) The Nevada Supreme Court's conclusion was not objectively unreasonable. It is far from conclusive that a victim in any given case would be given a psychological examination, and as discussed, in this case, the trial court considered the motion for an evaluation on the merits even though there was a procedural reason available to deny it. Thus, even if counsel had timely filed the motion, Petitioner has not demonstrated a reasonable likelihood of a different result, *i.e.*, that he would have obtained a psychological exam. He has further failed to establish that an examination would have changed the outcome of the proceedings. Accordingly, Petitioner has not established that he received ineffective assistance of counsel.

Petitioner is not entitled to relief on Ground 18 of the petition.

### F. Ground 21

In Ground 21, Petitioner asserts that the trial court erred in denying his motion for investigative fees. (ECF No. 2-1 at 38.) The trial court denied Petitioner's motion for investigative fees on the grounds that it was unfair to defendants who had to pay for their own legal representation if the court were to pay for an investigator for indigent defendants, that none of the witnesses were out-of-state and could all therefore be interviewed by defense counsel, and that the motion was made on the eve of trial. (See Exhs. 45, 47, 49.)

The Nevada Supreme Court held the trial court abused its discretion in denying the request for an investigator. But it concluded that the error was harmless beyond a reasonable doubt because the evidence against Petitioner was overwhelming. (Exh. 145 at 2.) It explained:

The State presented overwhelming evidence of Tiffany's sexual abuse of T.T. K.T. testified that T.T. would spend the night in Tiffany's bedroom and that T.T. would occasionally be at the house when she was not there. She testified that one day when she came home, T.T. was in Tiffany's bedroom with the door locked. She testified that upon trying to

enter the room she could hear Tiffany putting his belt on. She also testified that T.T. told her that he engaged in sexual acts with Tiffany in exchange for cigarettes. T.T. testified about the specific times Tiffany would touch his penis and perform fellatio on him. He testified that he felt violated when Tiffany performed fellatio on him, but that Tiffany forced and threated him to allow the act. T.T. testified that he performed the sexual acts in exchange for cigarettes. Detective Lomprey also testified that Tiffany admitted to buying cigarettes for T.T.

The State also presented overwhelming evidence of Tiffany's solicitation of J.M. to engage in sexual acts. K.T. testified that J.M. told her that Tiffany had propositioned him for fellatio. She testified that she observed Tiffany making signals to J.M. that simulated oral sex. J.M. testified that Tiffany propositioned him on two separate days, but on one of those days he had asked him repeatedly. K.D. corroborated K.T.'s and J.M's testimony.

Lastly, the State presented overwhelming evidence of Tiffany's child abuse and neglect of K.T., J.M., T.T., K.D., and C.J. All five minors testified that they smoked marijuana in Tiffany's presence. Detective Lomprey also testified that Tiffany admitted to smoking marijuana with all five minors.

Accordingly, although we determine the district court abused its discretion when it denied Tiffany's motion for fees to hire an investigator, we conclude that the district court's error was harmless beyond a reasonable doubt given the overwhelming evidence of guilt presented at trial.

(Exh. 145 at 2-4.)

The Nevada Supreme Court's conclusion rests on an accurate summary of the trial evidence, and granting the Nevada Supreme Court the AEDPA deference it is due, the Court does not find its conclusion that the error was harmless beyond a reasonable doubt to be objectively unreasonable. The evidence against Petitioner was indeed very strong. Petitioner has not shown that an investigation would have led to persuasive exculpatory evidence. While Petitioner argues that an investigation would have produced witnesses who could have testified that the victims were liars and one of them had previously falsely accused someone of sexual assault, he has offered absolutely no evidence from any of these supposed witnesses that this is what the content of their testimony would have been. Petitioner's argument of prejudice, then, is speculative and unsupported. The Court therefore cannot conclude that the Nevada Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law.

Petitioner is not entitled to relief on Ground 21 of the petition.

### G. Ground 27

Ground 27 is a claim of cumulative error. "[C]umulative error warrants habeas relief only where the errors have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). "In simpler terms, where the combined effect of individually harmless errors renders a criminal defense 'far less persuasive than it might [otherwise] have been,' the resulting conviction violates due process." *Id.* If the evidence of guilt is otherwise overwhelming, the errors are considered "harmless" and the conviction will generally be affirmed. *Id.* at 928. A "'verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Id.* (quoting *Strickland*, 466 U.S. at 696).

As the Nevada Supreme Court concluded with respect to other claims, the evidence against Petitioner was strong. There were multiple witnesses to his solicitation of J.M. and his smoking marijuana with his daughter and her friends. And even the sexual assault allegations were supported by more than just T.T.'s testimony; multiple people were aware that T.T. spent the night in Petitioner's room and his own daughter came home to find Petitioner and T.T. in Petitioner's locked bedroom, and hearing what sounded like Petitioner putting his belt back on. Whatever errors there may have been, including but not limited to the denial of investigative fees, the errors were harmless in light of the strong evidence against Petitioner.

Petitioner therefore is not entitled to relief on Ground 27 of the petition.

### H. Request for Evidentiary Hearing and Discovery

In his reply, Petitioner asserts a request for an evidentiary hearing and discovery. (ECF No. 70 at 16.) In reviewing the merits of the petition pursuant to 28 U.S.C. § 2254(d)(1), as the Court does here, the Court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181. There is therefore no basis for an evidentiary hearing. The Court otherwise does not find good

cause to allow discovery in this case, particularly at this late juncture. Accordingly, the requests for evidentiary hearing and discovery are denied.

## I. Certificate of Appealability

In order to proceed with an appeal, Petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski*, 435 F.3d 946, 950-951 (9th Cir. 2006); *see also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a Petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The Petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen*, 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *See id.*

The Court has considered the issues raised by Petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and with one exception determines that none meet that standard. The Court will grant Petitioner a certificate of appealability with respect to whether the Nevada Supreme Court was objectively unreasonable in concluding that Petitioner's due process rights were not violated by the trial court's denial of fees for an investigator. The Court does so because it concludes that the objective reasonableness of the Nevada Supreme Court's resolution of this claim could be debated amongst jurists of reason. Accordingly, the Court will grant Petitioner a certificate of appealability in this respect only and deny a certificate of appealability in all other respects.

///

///

///

## V. CONCLUSION

In accordance with the foregoing, it is therefore ordered that the petition for writ of habeas corpus in this case (ECF No. 2) is denied on the merits. This action is therefore dismissed with prejudice.

It is further ordered that Petitioner is denied a certificate of appealability, except with respect to the following issue: whether the Nevada Supreme Court was objectively unreasonable in concluding that Petitioner's due process rights were not violated by the trial court's denial of fees for an investigator. Petitioner is granted a certificate of appealability in this respect and denied a certificate of appealability in all other respects.

It is further ordered that the Clerk of Court shall enter judgment accordingly and close this action.

DATED THIS 18th day of March 2019.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE